UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN J. POWELL, | ) | Case No. 1:15CV2120 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MANSFIELD CORRECTIONAL | ) | |
| INSTITUTION[1], | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| | ) | |

On October 2, 2015, Petitioner, Jonathan Powell ("Petitioner"), pro se, executed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was filed with this Court on October 13, 2015.  ECF Dkt. #1.  He seeks relief for alleged constitutional violations that occurred during his Cuyahoga County, Ohio Court of Common Pleas convictions for two counts of murder with specifications, one count of kidnapping with specifications, and two counts of aggravated murder with specifications in violation of the Ohio Revised Code ("ORC").  *Id.*

On February 4, 2016, Respondent, Alan J. Lazaroff, Warden of Mansfield Correctional Institution, in Mansfield, Ohio, filed an Answer/Return of Writ.  ECF Dkt. #8.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice:

## I.    SYNOPSIS OF THE FACTS

The Eighth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403

---

[1] As Respondent points out, the proper party respondent in the instant case is Alan J. Lazaroff, the Warden of Mansfield Correctional Institution and not the institution itself.  *See* Rule 2(b) of Rules Governing 2254 Cases, 28 U.S.C. § 2254.

(1999).  As set forth by the Ohio Court of Appeals, the facts are:

> A jury found defendant-appellant Jonathan Powell guilty of shooting and killing two childhood friends: TreVaun Brown and Cedric Tate. There were no eyewitnesses to the shooting, and different guns were used to kill each victim. The state offered circumstantial evidence of murder by showing that Powell and his victims were alone at the time of the shootings, that Powell was known to carry the same kind of gun and ammunition used in one of the shootings, that Powell went into hiding after the murders, that Powell made incriminating statements to others shortly after the murders, and that jail authorities intercepted a letter Powell attempted to send to some of those present at the location of the shootings telling them to make no statements to the police and to avoid testifying in court.
>
> ***
>
> The evidence showed that the shootings occurred at a house where Powell's family formerly resided. Although his family moved from the house, the utilities were maintained and Powell continued to use the house as a place where his friends could drink and gamble. On the night of the shooting, Powell had a number of people over to the house. Some of them were in the basement shooting dice. Powell and Tate were upstairs and began wrestling. It was unclear why they began wrestling, but witnesses said that Powell had a smile on his face, so they assumed that Powell and Tate were wrestling for fun. Everyone then left the house and went to a bar. They returned to the house a few hours later without incident. One witness saw Powell and Brown go into the basement. A while later, those present heard gunshots from the basement. Powell came up from the basement and was characterized as looking like "a demon." Powell said that Brown was in the basement "tripping, he shooting that gun" and commented on the fact that Tate brought Brown to the house. One of the people at the house went down to the basement and saw that Brown had been shot. He came back upstairs, told everyone that they had to leave, and asked Powell, "[w]hat the f*ck did you do?" Everyone started running for the front door, but Powell was seen putting his arm out to prevent Tate from leaving. Powell then slammed the door shut. He and Tate were the only two people left in the house. Seconds later, witnesses saw a flash of light coming from the window and heard shots fired.
>
> Tate and Brown were shot multiple times: Brown was shot five times in the head, trunk, and right lower extremity; Tate was shot five times in the trunk, right and left upper extremities, and left lower extremity. The two victims had been shot by different guns: Brown by a .38 caliber; Tate by a .45 caliber. Powell was known to carry a .45 caliber firearm and the type of bullet recovered from Tate's body matched boxed ammunition found in Powell's house.
>
> ***
>
> Apart from the circumstantial evidence provided by witnesses at the house, Powell's actions after the shooting tended to show his guilt. He showed up at the home of his infant goddaughter at about 4 a.m., just a few hours after the shootings. The goddaughter's mother heard a knock at the door and thought it was her boyfriend, so she unlocked the door, went back to her bedroom, and closed the bedroom door. Powell let himself into the bedroom, woke his goddaughter who was sleeping in the same room with her mother, and began playing with her. The child's mother found this conduct unusual, so she asked him what was wrong. Powell replied, "I f*cked up." When she asked him to be more specific, he simply ignored her and went on playing with the child. A short while later, the child's father appeared. The father had

-2-

been present at Powell's house during the shootings, and expressed dismay at Powell's presence in the house. He told Powell to leave. Powell left the house a few minutes later.

Powell went to the house of a female friend the day after the shooting. He spent the day there, and then had his aunt drive the friend to a motel. He met her at the motel and they stayed there for two days, not leaving the room. The female friend had heard about the shootings and asked Powell what happened, but he refused to comment.

Perhaps most telling of Powell's post-shooting activities was his attempt to contact friends and family while being held in jail. Just two weeks after Powell's arrest, jail officials intercepted a letter addressed to "the Fam." A corrections sergeant in the sheriff's department testified that the word "Fam" was a "red flag" for gang-related activity. The letter was addressed to a residence on the same street where the murders occurred and bore a fictitious return address. Included in the letter was written: "My real info: Jonathan Powell, SO 0276144, Cleveland, Ohio, 44101." The letter was signed "Johnny AKA Johnny B." The letter "B" was a reference to Powell's nickname, "Bravo." Among other things, the letter stated to one individual that "they can't charge you with murder if it ain't no witnesses." The letter stated: "But for real, the statements that count is Cookville and his Fam. Dom no sh*t won't or Brian, so try to get in touch with Cookville and let him know the real for me please." It also instructed the recipient of the letter to tell two persons who were present at the house during the shooting "just don't make no statements cuz they don't have to[.]" The letter asked the recipient to tell some of those present at the shooting "I'm sorry too." The letter instructed the recipient to "burn these letters ASAP." Two of Powell's friends testified that they recognized the handwriting in the letter as Powell's.

\*\*\*

Powell testified at trial to a version of events that lacked credibility. He did not claim self-defense, but rather that he was on the third floor of the house when he heard arguing on the first floor. He went downstairs and asked what was happening and then remarked that "they tripping." He went back upstairs and heard a single gunshot. He said he then heard a "boom, boom, boom, boom." He looked out the window but saw "nothing going on." He thought it was gunplay stating, "we hear gunshots all the time." When Powell went downstairs, he found no one in the front room of the house and saw that the front door was cracked. He went outside and entered the car of one of those present at the house.

\*\*\*

An expert from the Bureau of Criminal Identification and Investigation examined the letter, a pro se motion handwritten by Powell, and a handwriting exemplar Powell provided. The expert reported that she was forced to disregard the handwriting exemplar because it contained "elements characteristic of unnatural writing." A police detective who requested the handwriting exemplar stated her belief that Powell was trying to disguise his handwriting and for that reason asked that copies of pro se motions signed by Powell be submitted to the expert.

ECF Dkt. #8-1 at 119-134[2].

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

In its January 2012 term, the Cuyahoga County, Ohio Grand Jury indicted Petitioner on: two counts of aggravated murder in violation of ORC § 2903.01(A), with firearm specifications, course of conduct specifications, and felony murder specifications, two counts of aggravated murder in violation of ORC § 2903.01(B) with the same specifications, and two counts of kidnapping in violation of ORC § 2905.01(A)(3) with firearm specifications.  ECF Dkt. #8-1 at 4-9.

On December 14, 2012, the trial court issued a journal entry indicating that the jury returned a verdict finding Petitioner guilty of: the lesser included offense of murder under the first two counts of the indictment with the firearm specifications, and kidnapping and aggravated murder as charged in the third through sixth counts of the indictments.  ECF Dkt. #8-1 at 15.  The trial court found that the lesser included murder convictions in the first two counts were allied offenses and the State proceeded to sentence on the first count, so the court imposed a 15-year to life sentence on that count, with a 3-year prison term on the firearm specification to be served prior to the 15-year to life sentence.  *Id*.  The court further sentenced Petitioner to 8 years in prison on the kidnapping conviction in the third count of the indictment and found that the firearm specification merged from this count into the firearm specification in the first count.  *Id*.  The trial court also found the fourth and fifth counts of aggravated murder to be allied offenses to which the State wished to proceed on the fourth count and the court sentenced Petitioner to life without parole, plus a 3-year sentence on the firearm specification to be served prior to and consecutive to the life sentence.  *Id.*  Finally, the court sentenced Petitioner on the last conviction to 8 years in prison and found that the 3-year sentence on the firearm specification in this count merged with the firearm specification in the fourth count, but was to be consecutive to the firearm specifications in the first and third counts.  *Id*.  The trial court specified that the evidence showed that two guns were used.  *Id.*

---

[2]  Page numbers in this Report and Recommendation refer to the Page ID# in the electronic filing system.

**B**.    **Direct Appeal**

On January 9, 2013, Petitioner, through different counsel, filed a notice of appeal and asserted the following assignments of error in his appellate brief:

1. Appellant's right[s] to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments of the Constitution was[sic] violated when the trial court ruled that the State's Exhibit 503 was sufficiently authenticated for use in questioning witnesses and admission into evidence.

2. The trial court erred by denying Appellant's motions for mistrial in violation of his State and Federal constitutional rights to due process and a fair trial.

3. Appellant's State and Federal constitutional rights were violated when the State engaged in improper questioning and made improper comments throughout the trial over Appellant's objection.

4. The trial court erred by denying Appellant's motion for mistrial when the State made improper comments during closing arguments in violation of Appellant's State and Federal constitutional rights.

5. The trial court erred by admitting evidence in violation of the rules of evidence which deprived Appellant of his Federal and State constitutional rights.

6. Appellant was deprived of his right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

7. Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motions for acquittal in violation of his State and Federal constituiona[sic] rights.

8. The convictions were against the manifest weight of the evidence in violation of Appellant's State and Federal constitutional rights.

9. The court erred when it sentenced appellant to multiple prison terms for allied offenses of similar import.

10. The trial court erred by prohibiting appellant from explaining his actions when it was instructing the jury over appellant's objection that they could consider flight as proving consciousness of guilt.

11. Appellant's sentence is contrary to law and an abuse of discretion and constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

ECF Dkt. #8-1 at 17-62.  Petitioner filed a motion to supplement the record with trial exhibit 503 and the Ohio appellate court granted the motion.  *Id.* at 63-73.  The State of Ohio filed an appellate brief on September 5, 2013.  *Id.* at 74-116.

On May 15, 2014, the Ohio appellate court affirmed in part, reversed in part and remanded Petitioner's case for resentencing.  ECF Dkt. #8-1 at 117-169.  The Ohio appellate

court found insufficient evidence to support the kidnapping conviction as to one of the victims and vacated that conviction. *Id.* at 126-127. The court also found that the kidnapping conviction for the other victim should have been merged with the aggravated murder conviction at sentencing. *Id.* at 165-166. The court remanded the case to the trial court for resentencing. *Id.*

### C. Ohio Supreme Court

On June 30, 2014, Petitioner, pro se, filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #8-1 at 171-173. In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

> Proposition of Law 1: Whether the Appellant's right[s] to Due Process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments of the Constitution was[sic] violated when the trial court ruled that State's Exhibit 503 was sufficiently authenticated for use in questioning witnesses and admission into evidence.

> Proposition of Law 2: The trial court erred by denying Appellant's motion [for] mistrial in violation of his Federal Constitutional rights to Due Process and a fair trial.

> Proposition of Law 3: Whether Appellant's Federal Constitutional rights were violated when the State engaged in improper questioning and made improper comments throughout the trail[sic] and over Appellant's objection.

> Proposition of Law 4: Whether the trial court erred by denying Appellant's motion for mistrial when the State made improper improper[sic] comments during closing arguments in violation of Appellant's Federal Constitutional rights.

> Proposition of Law 5: Whether Appellant was deprived of his right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

> Proposition of Law 6: Whether Appellant's convictions weer[sic] not supported by sufficient evidence and the trial court erred by denying his motions for acquittal in violation of his Federal Constitutional rights.

> Proposition of Law 7: Whether the trial court erred by prohibiting Appellant from explaining his actions when it was instructing the jury over Appellant's objections that they could consider flight as proving consciousness of guilt.

*Id.* at 173-239.

On October 8, 2014, the Supreme Court of Ohio declined jurisdiction of Petitioner's appeal. ECF Dkt. #8-1 at 240.

### D. Resentencing

On October 28, 2014, the administrative judge of the trial court remanded Petitioner's case to the trial court per the order of the Ohio appellate court. ECF Dkt. #8-1 at 241. The trial court thereafter vacated one of Petitioner's kidnapping convictions as per the Ohio appellate court order and the State elected to proceed with resentencing on the Count 4 aggravated murder conviction for the merged aggravated murder charges. *Id.* at 242. The trial court resentenced Petitioner to life without parole on the aggravated murder conviction, 15 years to life on the lesser included murder conviction, and 3 years for the firearm specifications, all to be served consecutively. *Id.*

Petitioner did not appeal the resentencing.

## III.    28 U.S.C. § 2254 PETITION

On October 2, 2015, Petitioner, pro se, executed the instant petition for a writ of federal habeas corpus, which was filed in this Court on October 13, 2015. ECF Dkt. #1. Petitioner raises the following grounds for relief:

I.    The Petitioner's Rights to Due Process and a fair trial under the fifth, sixth, and fourteenth Amendments of the Constitution was[sic] violated when the trial court ruled that State's Exhibit 503 was sufficiently authenticated for use in questioning witnesses and admission into evidence.

II.    The trial court erred by denying Petitioner's motion for mistrial in violation of Petitioner's Federal Constitutional Rights, and a fair trial.

III.    Petitioner's Federal Constitutional Rights were violated were violated [sic] when [sic] violated when the engage[sic] in improper questioning and made improper comments throughout the trial and over Petitioner's objections.

IV.    The trial court erred by denying Petitioner's motion for mistrial when the State made improper comments during closing arguments in violation of Petitioner's Constitutional Rights.

V.    Petitioner was deprived of his right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

VI.    Petitioner's convictions were not supported by sufficient evidence and the trial court erred by denying his motions for acquittal in violation of Petitioner's Constitutional Rights.

ECF Dkt. #1 at 18-19. On February 4, 2016, Respondent filed an Answer/Return of Writ.

ECF Dkt. #8.

## IV.     **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "[p]rocedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.     **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not currently at issue in this case.

### B.     **Exhaustion of State Remedies**

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon

-8-

state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

## C.    **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).   In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501

U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman,* 501 U.S. at 729-30; *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).  Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the

reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).

The above standards apply to the Court's review of Petitioner's claims.

## **V**.      **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but

-11-

unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.  LAW AND ANALYSIS

### A.  GROUND FOR RELIEF NUMBER 1

Respondent first asserts that the Court should decline to review Petitioner's first ground for

relief because he has procedurally defaulted this ground and he has otherwise failed to present the ground as a federal constitutional claim to the state courts.  ECF Dkt. #8 at 13-17.  Respondent also asserts that the ground for relief is without merit.  *Id*.

### 1.    Procedural Default

In his brief before the Ohio appellate court, Petitioner cited to and quoted Rule 901 of the Ohio Rules of Evidence, asserting that the Rule was violated when the State used a letter identified as State's Exhibit 503 without properly authenticating the letter and without establishing any foundation to identify Petitioner as the author of the letter.  ECF Dkt. #8-1 at 38-39.  Petitioner contended that no evidence or testimony was presented showing that any of the witnesses who identified Petitioner as the author of the letter were familiar with his handwriting.  *Id*. at 39.  He also argued that allowing witnesses to read excerpts of the letter in court allowed the State to offer the statements in the letter for proof of the matter asserted, which was, that Petitioner had signed the letter and addressed it to the witnesses.  *Id.* at 40.  Petitioner further asserted that Rule 702 of the Ohio Rules of Evidence was violated when Detective Carlin was allowed to give opinion testimony on whether the handwriting in the letter was that of Petitioner as Detective Carlin was not qualified to give such testimony.  *Id.* at 41.

Petitioner further asserted that in his Ohio appellate brief that due to the lack of proper authentication of the letter, his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated.  ECF Dkt. #8-1 at 38, 40-41.  However, he made no specific argument concerning the violations of federal constitutional law beyond this generalized assertion.  Petitioner's entire argument before the Ohio appellate court is comprised of Ohio law and alleged violations relating to Ohio law.  There is one citation to a federal case, *United States v. Rutherford*, in a "see also" cite, following a citation to an Ohio appellate case.  *Id*. at 39, citing 2006 U.S. Dist. LEXIS 4132, at *9 (E.D. Pa. Jan. 26, 2006).  *Rutherford* refers to Rule 901 of the Federal Rules of Evidence.  *Id*.  However, beyond a secondary referral to this case and vague citations to the Fifth, Sixth and Fourteenth Amendments, Petitioner presented no arguments under federal law.  Rather, he focused on state law and the facts in asserting trial court error and violations of law concerning the admission of and testimony regarding the letter.  *Id*. at 113-126.  The Ohio appellate

-13-

court treated this claim solely as a matter of state law. *Id*. at 133-137.

A federal ground for relief is considered exhausted once it has been "fairly presented" at the first possible opportunity within "one complete round of the State's established appellate review process." *Carter*, 2012 WL 3854787, at *6, quoting *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir.2004); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir.2004).   An unexhausted claim is procedurally defaulted if the petitioner fails to exhaust state court remedies and state law no longer allows the petitioner to raise the claim. *Carter*, 2012 WL 3854787, at *6, citing *Williams*, 380 F.3d at 967.  When "a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir.2009).

As explained above, in order to avoid an exhaustion and subsequent procedural default, a petitioner must present his grounds for relief  "to the state courts under the same theory in which it is later presented in federal court."  *Wong*, 142 F.3d at 322. General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681, citing *Petrucelli*, 735 F.2d 684, 688-89 (2d Cir. 1984).

Accordingly, the undersigned recommends that the Court find that Petitioner's vague references to federal constitutional amendments and to one federal case as a secondary cite fail to fairly and fully present his ground for relief as a federal constitutional error to the Ohio appellate court.  He has therefore not exhausted his first ground for relief.  Further, he is barred from raising these claims before the Ohio courts as his time for filing a post-conviction petition before the Ohio court has elapsed and the issue would have otherwise been subject to dismissal because it could have been raised on direct appeal.  *See* Ohio Rev. Code § 2953.23; *Durr v. Mitchell*, 487 F.3d 423, 434 (6th Cir. 2007).  In addition, Petitioner fails to offer cause for not fairly presenting these claims as federal constitutional claims.

The Court can still consider Petitioner's constitutional arguments if the Court determines that it is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent..." *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.

2d 397 (1986). The Sixth Circuit Court of Appeals explained that the "actual innocence" exception, or the "fundamental miscarriage of justice" gateway, is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004), quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting *Murray*, 477 U.S. at 496. The Sixth Circuit held that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* Here, Petitioner has produced no new evidence to carry this burden and he makes no claims of actual innocence. The undersigned therefore recommends that the Court find that Petitioner has procedurally defaulted his first ground for relief.

### 2. **Cognizability**

Respondent also contends that Petitioner's first ground for relief is not cognizable in federal habeas corpus. ECF Dkt. #8 at 16-17. For the following reasons, the undersigned agrees and recommends that the Court find that Petitioner's first ground for relief is not cognizable.

A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). "A federal habeas court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted). Accordingly, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012). However, state-court evidentiary rulings may "rise to the level of due process violations [if] they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). They must be "so egregious that [they] result[ ]in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). "[C]ourts 'have defined the category of infractions that violate

-15-

'fundamental fairness' very narrowly.' " *Id*. (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

Thus, Petitioner's ground for relief, to the extent that he argues state court error, is not cognizable in federal habeas corpus review.  Further, Petitioner fails to show that the trial court's ruling falls into the narrow category of cases warranting the finding of a fundamental miscarriage of justice since he mainly relies upon Ohio law and fails to present any argument concerning fundamental fairness.

### 3.     Merits Review

Even if Petitioner's ground for relief was not procedurally defaulted and was cognizable, the undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.

Petitioner asserts before this Court that the trial court erred in ruling that the letter identified in State's Exhibit 503 was sufficiently authenticated under Rule 901 of the Ohio Rules of Evidence for use in questioning witnesses and for admission into evidence.  ECF Dkt. #1 at 18; ECF Dkt. #8-1 at 38-41.  Petitioner made the same argument before the Ohio appellate court, and added the assertion that allowing witnesses to read from the letter was prejudicial and violated hearsay evidence rules.  *Id.*  He also asserted that Detective Carlin's opinion testimony as to his handwriting on the letter violated Rule 702 of the Ohio Rules of Evidence.  *Id.*

Petitioner does not raise the issue concerning Detective Carlin's opinion testimony before this Court and he failed to raise this issue before the Ohio Supreme Court, He has therefore waived this claim.  In addressing the rest of Petitioner's assignment of error, the Ohio appellate court summarized Rule 901(A) of the Ohio Rules of Evidence and cited to Ohio caselaw finding that authentication under Rule 901 is a low threshold as it only requires a prima facie showing of genuineness and allows the jury to decide the true authenticity and probative value of the evidence. ECF Dkt. #8-1 at 133-134, citing Ohio Evid. R. 901(A); *State v. Toudle*, No. 98609, 2013 WL 1697600, 2013-Ohio-1548 (Ohio App. 8th Dist. 2013).  The court noted the expert's opinion that she had to disregard the handwriting exemplar to compare to the letter because it had "elements

-16-

characteristic of unnatural writing." ECF Dkt. #8-1 at 134. The Ohio appellate court ruled that despite the expert's inability to confirm that Petitioner authored the letter, the low threshold of Rule 901(A) was met by two state witnesses who were friends of Petitioner's and testified that they were familiar with his handwriting and recognized Petitioner's handwriting on the letter. *Id.* The court indicated that Rule 901(A) requires only that the proponent of the matter to be offered produce evidence "sufficient to support a finding that the matter in question is what the proponent claims it to be" and therefore, the State was not required to definitely prove that Petitioner wrote the letter in order for it to be admitted, but the State needed to show that a trier of fact could find, based upon the evidence, that Petitioner wrote the letter. *Id.*, citing *State v. Easter*, 75 Ohio App.3d 33, 25, 598 N.E.2d 845 (1991). The appellate court also ruled that non-expert witnesses who claim firsthand that they have knowledge of another's handwriting can authenticate the handwriting. ECF Dkt. #8-1 at 135, citing *State v. Shakoor*, No. 01CA121, 2003 WL 22231582, 2003-Ohio-5140 (Ohio App. 7th Dist. 2003).

A federal habeas corpus court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation omitted). In order to be entitled to federal habeas corpus relief, a petitioner must show that a state evidentiary ruling violated more than a state rule of evidence or procedure. A petitioner must show that the evidentiary ruling was "so egregious that it resulted in a denial of fundamental fairness." *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006), citing *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)). In other words, "'[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.'" *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). A state court evidentiary ruling does not violate due process unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Giles*, 449 F.3d at 704 (citing *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001)).

In the instant case, the undersigned recommends that the Court find that Petitioner has failed to show that the court's ruling under Rule 901 of the Ohio Rules of Evidence was egregious or resulted in fundamental unfairness.  The Ohio appellate court cited to Ohio caselaw supporting its ruling that the two witnesses who testified as to Petitioner authoring the letter were qualified to do so under Rule 901 as they met the low threshold required for the evidentiary rule.  ECF Dkt. #8-1 at 134.  The court pointed out that the two witnesses indicated that they were friends of Petitioner and testified that they were familiar with his handwriting.  *Id*.  The court also noted that the letter was addressed to one of the witnesses.  *Id*.  The court held that the witnesses' testimony that they were familiar with Petitioner's handwriting was sufficient to meet Rule 901's low threshold because the State was not required to definitely prove that it was Petitioner who authored the letter before it could be admitted, but rather, the State needed to prove only that a trier of fact could find, based on the evidence, that Petitioner wrote the letter.  *Id*., citing *State v. Easter*, 75 Ohio App.3d 22, 25, 598 N.E.2d 845 (Ohio App. 4th Dist. 1991). The appellate court further found that nonexpert witnesses who claim that they know another's handwriting can authenticate that handwriting.  ECF Dkt. #8-1 at 135, citing *Shakoor*, 2003 WL 22231582.

For these reasons, the undersigned recommends that the Court find that the Ohio appellate court's decision applying Ohio Rule of Evidence 901 and allowing the witnesses to testify that the writing on the letter was that of Petitioner, was not contrary to or an unreasonable application of United States Supreme Court precedent or an unreasonable application of the facts of record.

### B.    GROUND FOR RELIEF NUMBER 2

Petitioner asserts in this ground for relief that the trial court erred when it denied his motion for a mistrial, which violated his federal constitutional rights and a fair trial.  ECF Dkt. #1 at 18.  On appeal before the state appellate court, Petitioner asserted that the trial court erred by denying his motions for mistrial when the State cross-examined him about his prior record and when Kelvin Lester admitted to discussing his testimony with other witnesses while he was still under subpoena and was being examined at trial.  ECF Dkt. #8–1 at 41-42.

Respondent contends that Petitioner fails to state a federal constitutional violation in this ground for relief because he refers in general to constitutional rights and provides no real specificity

-18-

as to the alleged violations or the facts supporting the alleged violations.  ECF Dkt. #8 at 24.  He asserts that the assertions are improperly pled and violate Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts which requires the federal habeas corpus petition to "specify all grounds for relief available to petitioner" and to "state the facts supporting each ground." *Id*., quoting Rule 2(c) of the Rules Governing 2254 Proceedings in the United States District Courts.  Respondent also asserts that the issue of whether a state trial court abuses its discretion in declaring a mistrial is one of state law and it is not the province of a federal habeas corpus court to re-examine state court determinations as to declaring mistrials.  ECF Dkt. #8 at 25, citing *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001), *Kyle v. Gansheimer,* No. 5:11CV1395, 2013 WL 6330900 (N.D. Ohio Dec. 4, 2013), citing *Estelle*, 502 U.S. at 67-68.

The undersigned recommends that the Court find that Petitioner has failed to comply with Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts.  Petitioner merely asserts in this ground for relief that the trial court erred by denying his motion for mistrial without asserting any specific facts concerning the basis for the motion for mistrial, the trial court's reason or reasons to deny the motion, or the legal support for his assertion.  ECF Dkt. #1 at 18.  He states only that his "federal constitutional rights" and right to "a fair trial" were violated by the denial of his motion for mistrial.  *Id*.

Should the Court wish to look to Petitioner's Ohio appellate brief and garner sufficient information to avoid the Rule 2(c) procedural bar, Petitioner refers to two specific incidents in his Ohio appellate brief, being cross-examined about his juvenile record, and Kelvin Lester's admission that he discussed his testimony with other witnesses, as violative of his constitutional rights.  ECF Dkt. #8-1 at 41-42.  Petitioner also cites to Ohio caselaw and federal caselaw concerning the court's discretion in granting a mistrial and the standard of review for declaring a mistrial.  *Id*.

Even if he avoided a Rule 2(c) procedural bar, the undersigned recommends that the Court find that Petitioner has failed to state a federal constitutional violation in this ground for relief.  The main thrust of Petitioner's ground for relief is that the trial court abused its discretion by not declaring a mistrial concerning the cross-examination of him regarding his juvenile record and Kelvin Lester's admission that he discussed his testimony with other witnesses while he was still

under subpoena and examination at trial. Petitioner offers no explanation in his federal habeas corpus petition as to this ground for relief beyond stating that the trial court erred by denying his motion for mistrial in violation of his "federal constitutional rights and a fair trial." ECF Dkt. #1 at 18. And in his Ohio appellate brief, Petitioner focuses solely on the trial court abusing its discretion by not declaring a mistrial as requested after the prosecution cross-examined him about his juvenile record and Kelvin Lester testified that he spoke to other witnesses about his testimony. ECF Dkt. #8-1 at 41-42.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a), *Pulley*, 456 U.S. at 41; *Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Challenges concerning a state court's alleged abuse of discretion in denying motions for mistrial are generally matters of state law. *See Adams v. Bunting*, No. 1:14CV1450, 2015 WL 6658680, at 12 (N.D. Ohio Oct. 30, 2015) adopting Report and Recommendation. Petitioner's ground for relief is nevertheless subject to review for a violation of fundamental fairness, that is, to determine whether the alleged errors "so infected the trial with unfairness as to render the resulting conviction a denial of due process, which could not be remedied other than by declaring a mistrial." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The undersigned will address whether the alleged errors in this case violated fundamental fairness.

At trial, Petitioner testified. ECF Dkt. #8-11 at 9. On direct examination, Petitioner's counsel asked Petitioner if he had any convictions for any type of federal or state offenses. *Id*. at 11. Petitioner replied, "As an adult, no, sir." *Id.* During cross-examination by the prosecution, Petitioner was asked whether he remembered being asked on direct whether he had been convicted of any felonies. *Id*. at 76. Petitioner responded that he did remember and stated that he had answered "no." *Id.* The prosecution told him that he did not answer the question that way, and Petitioner responded that he had answered the question by saying "nothing adult." *Id.* Defense counsel then objected and the court overruled the objection. *Id.* Petitioner reiterated that he had said

"nothing adult," and the prosecutor followed up by asking him, "does that mean you had something in Juvenile Court?" *Id*. at 77. Defense counsel objected again and the court had a sidebar discussion, indicating that Petitioner had delinquency charges in juvenile court. *Id.* at 76-78. The parties then discussed with the court whether the prosecution could proceed with questioning Petitioner regarding his juvenile court record and whether Petitioner opened the door by indicating that he had no adult felony record. *Id*. at 76-81. Upon discussion, the prosecution stated "I can leave it alone." *Id*. at 81. The court thereafter sustained defense counsel's objection and no further questions were asked of Petitioner concerning his juvenile record. *Id.*

In addressing this issue on appeal, the state appellate court quoted the transcript of Petitioner's response to his counsel that he had no adult felony convictions, and the testimony surrounding the prosecution's question to Petitioner as to whether he had "something in Juvenile Court?" ECF Dkt. #8-1 at 137-138. The court cited to Rule 609(A)(2) of the Ohio Rules of Evidence and Ohio Revised Code § 2151.357(H) which both prohibit using juvenile adjudications to impeach the credibility of a witness. *Id*. at 138. The court then cited to Ohio caselaw holding that a defendant can voluntarily introduce his juvenile history and waive his protection under the statute when he is allowed to introduce evidence of his life history in a criminal case. *Id.* The Ohio appellate court found Petitioner's case very similar to two Ohio cases, *State v. Marinski,* 139 Ohio St. 559, 41 N.E.2d 387 (1942) and *State v. Phillips*, No. 96329, 2012 WL 424958, 2012-Ohio-473 (Ohio App. 8th Dist. Feb. 9, 2012). The court reviewed the facts of *Phillips*, finding it "very similar" to that of Petitioner, in which Phillips had testified on direct examination that he had never been in trouble as an adult and had been in trouble as a juvenile only twice, but he was not really convicted. *Id*. The Ohio appellate court indicated that the state cross-examined Phillips concerning his juvenile record and he appealed, asserting that the state's questioning violated Rule 609(D) of the Ohio Rules of Evidence and ORC § 2151.357(H). *Id.* The Ohio appellate court noted its holding in *Phillips* that the state was permitted to question Phillips about his juvenile history as he had voluntarily testified about his life history. *Id.* The Ohio appellate court therefore found no error in Petitioner's case when the prosecution asked Petitioner about "something in Juvenile Court" as Petitioner had qualified his answer when asked about criminal convictions to none "as an adult." *Id*. at 139. The

court also found little likelihood of prejudice resulting from the question as the prosecution abandoned its line of questioning concerning Petitioner's juvenile record and moved on to other topics. *Id*.

Upon review of the Ohio appellate court's decision, the undersigned recommends that the Court find that there was no fundamental miscarriage of justice. As found by the Ohio appellate court, Petitioner's response to whether he had any felony convictions opened the door to Petitioner's life history such that the State could inquire further. Moreover, as also found by the Ohio appellate court, no prejudice to Petitioner resulted from the State's one question as the line of questioning was completely abandoned after that question and the sidebar that immediately followed.

As to the trial court's denial of Petitioner's motion for mistrial concerning Kelvin Lester's testimony that he spoke to other witnesses about his testimony, the undersigned also recommends that the Court find no fundamental miscarriage of justice occurred. The Ohio appellate court acknowledged that the trial court admonished Kelvin Lester not to speak to anyone before it recessed for the day and Kelvin Lester was left on the stand. ECF Dkt. #8-6 at 276-278. Kelvin Lester had testified that he lived five houses down from the house where the shooting occurred and he was at that house when he heard four or five rapid gunshots coming from the basement. *Id*. He further testified that Petitioner then came up the steps and said that one of the victims "was tripping" and "down there shooting." *Id.* at 278. Kelvin Lester testified that his brother then went down to the basement and came back up immediately, grabbed him, and said that they had to go. *Id.* at 280. They went to Petitioner's car when they heard more gunshots and heard Petitioner say, "ain't nobody's going anywhere." *Id*. at 284. After this testimony, the trial court indicated that trial was recessed for the day and the court admonished all of the witnesses, including Kelvin Lester, that they were not to talk to anyone about their testimony. *Id.* at 287.

When the court reconvened and before Kelvin Lester was put back on the stand to complete his testimony, the prosecution informed the court that he had received a phone call from someone indicating that Kelvin Lester had a conversation with Greg Tate, another witness who previously testified, the night after court was recessed and Kelvin Lester was admonished about talking with other witnesses about his testimony. ECF Dkt. #8-7 at 2-4. It was indicated that Kelvin Lester told

Greg Tate that his testimony was not truthful the day before as he made it up or was told what to say by Wayne Crump, another witness.  *Id*. at 4.  The prosecution explained that he had just spoken with Kelvin Lester, who told him that he did not speak with Greg Tate about his testimony, he was not untruthful about his testimony, and his testimony was not what Wayne Crump told him to say.  *Id.*  The prosecution asked the court to voir dire Kelvin Lester.  *Id.*

The court called Kelvin Lester to the stand and asked if he had told untruthful testimony and if he was prompted to tell untruthful testimony by another individual.  ECF Dkt. #8-7 at 6.  Kelvin Lester answered no to those questions.  *Id*.  The prosecution then asked Kelvin Lester if he discussed his testimony with anyone and responded that he did not.  *Id*.  The defense then asked Kelvin Lester if he spoke to Greg Tate after his testimony the day prior, and Kelvin Lester indicated that he did speak with Mr. Tate, but not about his testimony.  *Id*.  Kelvin Lester testified that he called Mr. Tate on the phone and spoke to him, but they did not discuss his testimony, and while they talked about his brother, who also previously testified, they did not talk specifically about his testimony, but rather talked about all of the questions that they had asked his brother.  *Id.* at 8-10.  He also testified that he called Greg Tate because he wanted to buy marijuana from him and Greg Tate came to his house with the marijuana and they talked.  *Id*. at 11-12.  When further questioned by the court, Kelvin Lester admitted that he and Greg Tate did talk about his testimony, but he stated that his testimony the day prior was truthful and no one had suggested what his testimony should be.  *Id.* at 14.

Petitioner's trial counsel then requested that the court strike Kelvin Lester's testimony for violating the court's order not to discuss his testimony and he also requested a mistrial because Kelvin Lester initiated improper contact with a state witness, Greg Tate, who had already testified, and they were talking right in the middle of Kelvin Lester's testimony.  ECF Dkt. #8-7 at 15.  The trial court denied the motion for a mistrial and swore Mr. Lester in and explained to him the importance of testifying truthfully and honestly.  *Id*. at 18-19.  The court thereafter called Greg Tate's mother to testify, as she was the person who informed the prosecution that Kelvin Lester had contacted her son Greg Tate and they spoke after Kelvin Lester had testified.  *Id*. at 24-26.  Mrs. Tate testified that Greg went over to see Kelvin Lester after Kelvin Lester testified and Kelvin Lester

told Greg Tate that he lied to the jury about Wayne Crump getting into his car as Wayne had asked him to do so.  *Id.*  Both the prosecution and defense counsel were given the opportunity to question Mrs. Tate.  *Id.* at 24-43.  Defense counsel then requested that the court not move forward with allowing Kelvin Lester to complete his testimony without first allowing questioning of Greg Tate, who was not present as he was at work.  *Id.* at 43-45.  The court denied the request, informing counsel that he would have an opportunity to question Mr. Tate, and if he needed to, he could call him back to the stand when he was available.  *Id.* at 45-47.  Kelvin Lester was then called back on the stand to complete his testimony.  *Id.* at 48.  During his testimony, both the prosecution and Petitioner's defense counsel thoroughly questioned him about his prior testimony concerning Wayne Crump and his conversation with Greg Tate after Kelvin Lester's prior testimony.  *Id.* at 52-60, 73-80.

After a few witnesses, Greg Tate was brought back to court in order to testify concerning his conversation with Kelvin Lester after Kelvin Lester's first day of testimony.  ECF Dkt. #8-7 at 154.  He confirmed that Kelvin Lester called him after Kelvin's first day of testimony and when they met in person, Greg Tate asked him if he saw Kelvin's brother Wayne Crump get into Greg Tate's car right after the shooting.  *Id.* at 155.  Greg Tate indicated that Kelvin Lester told him that he did not see Wayne get into Greg's car and he saw Wayne get into his own car, but Wayne told Kelvin Lester to say that he saw Wayne get into Greg Tate's car.  *Id.*  Greg Tate testified that he then told Kelvin Lester that he could not lie for his brother and he had to tell the truth.  *Id.* at 156.  Defense counsel then questioned Greg Tate, who indicated that he was in court when Kelvin Lester first testified and he heard him say things on the stand that were not true, so he asked him about it the night after he testified and Kelvin Lester told him that he answered some of the questions in court the way that Wayne told him to.  *Id.* at 158.  Greg Tate further testified that Kelvin Lester then called him again later that night and asked him if Greg was with Wayne, which he was not, and Kelvin Lester told Greg that he testified the way he did because he did not want to make Wayne, his brother, look bad.  *Id.* at 159-160.

After Greg Tate's testimony, defense counsel again moved for a mistrial, and the court denied the motion, finding that there was no substantial deviation from the case as other witnesses

-24-

had testified in support of the substantive issue.  ECF Dkt. #8-7 at 165.  The court did allow the defense the opportunity to recall Greg Tate at a later time if necessary.  *Id.*  The defense did not do so.

In addressing this issue on appeal, the state appellate court reviewed the transcript relating to Kelvin Lester speaking with Greg Tate in violation of the court's admonishment the previous day that Kelvin Lester was not to speak to anyone regarding his testimony.  ECF Dkt. #8-1 at 140-141.  The court cited to Rule 615(A) of the Ohio Rules of Evidence which allows either party to request, or the court to order on its own, the separation of witnesses so that they do not hear the testimony of other witnesses.  *Id.* at 141.  The court cited to Rule 615 of the Federal Rules of Evidence as similar to that of Rule 615 of the Ohio Rules of Evidence.  *Id.*  The court held that while both Rules were written in mandatory language, the court had discretion to enforce a violation of the Rule.  *Id.*  The Ohio appellate court found that a party complaining of the violation of Rule 615(A) had to not only show prejudice resulting from the violation, but also that the trial court abused its discretion in addressing a violation of the Rule.  *Id.*  The appellate court found that while Kelvin Lester violated the court's order not to discuss his testimony with anyone, Petitioner failed to identify the prejudice resulting from the violation in his appellate brief and the trial court's extensive voir dire and defense counsel's comprehensive cross-examination concerning the violation of the court's order showed no resulting prejudice to Petitioner or an abuse of discretion by the court.  *Id.* at 141-142.

Similar to his Ohio appellate brief, Petitioner does not identify the resulting prejudice that he believes that he suffered from Kelvin Lester's violation of the trial court's order not to discuss his testimony with anyone.  ECF Dkt. #1.  Further, as found by the Ohio appellate court, the trial court's voir dire of Kelvin Lester about his limited discussion with Greg Tate regarding one part of his testimony concerning the whereabouts of Kelvin Lester's brother following the shooting, and defense counsel's extensive cross-examination of Kelvin Lester and Greg Tate concerning this issue, negated any prejudice that could have resulted from the violation of the court's order.  The Court should therefore find no merit to Petitioner's second ground for relief.

-25-

### C.    GROUND FOR RELIEF NUMBER 3

In this ground for relief, Petitioner asserts that his "federal constitutional rights were violated when violated[sic] when the [sic] engage [sic] in improper questioning and made improper comments throughout the trial and over Petitioner's objections."  ECF Dkt. #1 at 18.  Respondent asserts that this ground for relief is improperly pled and fails to state a federal constitutional violation.  ECF Dkt. #8 at 26-27.

The undersigned recommends that the Court find that Petitioner fails to provide any specificity or analysis about his third ground for relief.  Without more specificity, the undersigned cannot determine which questions and comments Petitioner is referring to in this ground for relief or the violations of the federal constitutional rights that he is alleging resulted therefrom.  "'Rule 2 of the Rules Governing Habeas Corpus Cases requires a more detailed statement' than the notice pleadings of Rule 8 of the Federal Rules of Civil Procedure." *Johnson v. Lazaroff*, No. 1:15CV43, 2016 WL 791609, at *12 (N.D. Ohio Jan. 6, 2016),[3] quoting *Mayle v. Felix*, 545 U.S. 644, (2005) and citing  *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir.1990) ("We join the numerous federal courts which have repeatedly expressed their unwillingness to sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief."); and *Mills v. Larose*, No. 13CV1059, 2015 WL 687829, at *11 (N.D. Ohio Feb. 18, 2015) (federal habeas petition is subject to dismissal when it "fail[s] to provide factual context in support of legal conclusions[,]"

Further, even if the Court reviews Petitioner's brief before the Ohio appellate court in order to discern specific assertions relating to this ground for relief, the undersigned is uncertain which of the claims that Petitioner is presenting in the instant ground for relief.  Petitioner presented three separate issues in his third assignment of error before the Ohio appellate court.  The first concerns leading questions allegedly asked by the prosecutor, the second alleges that the trial court improperly designated one of the state's witnesses as an adverse/hostile witness, and the last alleges

---

[3]  Report & Recommendation adopted by 2016 WL 778047 (N.D. Ohio Feb. 29, 2016),

that the trial court erred in allowing the state to ask witnesses questions on re-direct examination that exceeded the proper scope of cross-examination.  ECF Dkt. #8-1 at 44-46.

In asserting the claim of trial court error in designating a state's witness as an adverse/hostile witness, Petitioner's three-sentence statement relies solely upon Ohio law.  ECF Dkt. #8-1 at 46. The Ohio appellate court found Petitioner's assertion of this issue violative of Rule 16(A)(7) of the Ohio Rules of Appellate Procedure because Petitioner failed to assert an argument and reasons in support of the argument.  ECF Dkt. #8-1 at 145.  The Ohio appellate court thereafter addressed the issue.  *Id*.  The fact that the Ohio appellate court went on to address the issue after finding a procedural defect does not prevent procedural default from being applied.  *See Baze v. Parker*, 371 F.3d 310, 320 (6th Cir.2004) (finding that subsequent discussion of the merits does not always cast a doubt on the procedural bar); *Clifford v. Chandler*, 333 F.3d 724, 728-29 (6th Cir.2003), overruled in part on other grounds by *Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (holding that when a state court relies on an independent procedural ground to deny relief, a discussion of the merits will not supersede the procedural bar to habeas relief); *Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir.2000) (finding the state court's invocation of the procedural bar still valid and the cause and prejudice test applicable even where the state court addresses the merits by first using the phrase "More importantly.").When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  Thus, "a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity." *Harris v. Reed*, 489 U.S. 255, 264 (1989).  The Ohio appellate court relied upon its procedural Rule 16(A)(7) and found that the Rule required an appellant's brief to provide an argument and reasons supporting the argument and Petitioner's assertion provided a single supportive sentence that was conclusory.  Accordingly, the Court should find that Petitioner has procedurally defaulted this issue and he presents no cause or prejudice for not complying with the Ohio Appellate Rule.  Moreover, the undersigned finds that the instant case is not one that fits the narrow class of cases of a fundamental miscarriage of justice.

Petitioner's third assertion in his Ohio appellate brief is merely a short paragraph asserting that the trial court erred and violated his "constitutional rights" by allowing the state to question witnesses beyond the scope of cross-examination.  ECF Dkt. #8-1 at 46.  Petitioner cited to no law whatsoever for this short assertion, except to state that it violated his "constitutional rights."  *Id*. Without more facts and some reference to a federal constitutional right, the undersigned recommends that the Court decline to address this assertion.

This leaves the first part of Petitioner's third assignment of error before the Ohio appellate court.  Petitioner cited to the state's alleged use of leading questions for its own witnesses, and he cited to 10 transcript pages of alleged examples of leading the witnesses.  *Id.* at 44.  Petitioner also cited to two federal cases, but he provided no analysis of how these cases applied in support of his allegations concerning leading questions.  *Id*.  The first case is one in which the First Circuit Court of Appeals warned of the "evil of leading a friendly witness" but also held that leading is sometimes tolerated for refreshing a witness's memory, orienting a witness, helping a witness to concentrate, or to help a witness understand what the questioner wants to know.  *U.S. v. McGovern*, 499 F.2d 1140, 1142 (1st Cir. 1974).  The court held that the questions asked in the case before it were leading of the government's principal witness, but no prejudice resulted because the questions "were neither so suggestive nor so numerous" as to appear capable of restructuring the witness's memory and the witness was unusually disoriented.  *Id*.  The court further held that "viewing his entire testimony, we think the jury, having been cautioned repeatedly against the dangers of leading and having the benefit of exhaustive cross examination, remained able to weigh his testimony and credibility."  *Id.* The second case that Petitioner cited to was the United State Supreme Court case of *Greer v. Miller*, 483 U.S. 756 (1987), a case concerning a prosecutor's comments on a defendant's post-arrest silence.  Petitioner relied upon this case for the proposition that the court must look at the entire proceeding and place the questions and comments from the prosecutor in context in order to determine whether the prosecutor's comments violated due process.  ECF Dkt. #8-1 at 44.

Even presuming that Petitioner in this case is raising the same alleged leading questions before this Court as he did in the third assignment of error of his Ohio appellate court, Petitioner

-28-

fails to presents any analysis of how any alleged leading questions violated his federal constitutional rights beyond his mere citation to two federal cases with generalized holdings.

For these reasons, the undersigned recommends that the Court find that Petitioner's third ground for relief is improperly pled and fails to properly present a federal constitutional claim before this Court.

### D.  GROUND FOR RELIEF NUMBER 4

In his fourth assignment of error, Petitioner asserts that "[t]he Trial Court erred by denying Petitioner's motion for mistrial when the State made improper comments during closing arguments in violation of Petitioner's constitutional rights."  ECF Dkt. #1 at 18.  Respondent contends that Petitioner has improperly pled this ground for relief and his ground for relief is otherwise without merit.  ECF Dkt. #8 at 27-28.

As with his other grounds for relief, the undersigned notes that in his federal habeas corpus petition, Petitioner does not identify the improper comments or the constitutional rights that he alleges were violated.  He therefore has failed to comply with Rule 2 of the Rules Governing Habeas Corpus Cases in the United States District Courts as he presents no facts or support for this ground for relief.  *Johnson*, 2016 WL 791609, at *12,[4] quoting *Mayle*, 545 U.S. 644, (2005) and citing *Adams*, 897 F.2d at 333("We join the numerous federal courts which have repeatedly expressed their unwillingness to sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief."); and *Mills*, 2015 WL 687829, at *11 (federal habeas petition is subject to dismissal when it "fail[s] to provide factual context in support of legal conclusions[.]" In addition, Petitioner fails to identify any federal constitutional right that was allegedly violated and in fact does not even refer to a federal constitutional right at all.  ECF Dkt. #1.

However, should the Court wish to review Petitioner's Ohio appellate court brief, he cited to three specific comments by the prosecutor in closing argument and defense counsel's objections. ECF Dkt. #8-1 at 47. He also cited to federal law holding that the prosecution cannot appeal to a

---

[4]  Report & Recommendation adopted by 2016 WL 778047 (N.D. Ohio Feb. 29, 2016),

jury's passion by characterizing its job as protecting community values, preserving civil order, or deterring future lawbreaking.  *Id.*  Petitioner also referenced photographs submitted by the State in its closing argument and asserted that prejudice against him was clear when the use of the victims' pictures at trial caused crying in the courtroom.  *Id.*  He further asserted that the prosecutor improperly commented on his pre-arrest silence and improperly expressed the opinion that Greg Tate, both of Petitioner's girlfriends, and Petitioner himself, were liars. *Id.* at 47-49.  Petitioner cited to federal law concerning pre-arrest silence, and cited federal ineffective assistance of counsel caselaw and Ohio law as to the credibility assertions.  *Id.* at 48.  Petitioner indicated that the prosecutor in his case did not act with malice with the alleged comments made, but his right to a fair trial was nevertheless prejudiced and was compounded by his counsel's failure to object to the improper remarks and the trial court's error in not providing a curative instruction to the jury.  *Id.* at 49.

Respondent contends that the Ohio appellate court's decision is not contrary to or an unreasonable application of United States Supreme Court precedent.  ECF Dkt. #8 at 28-36.  In addressing Petitioner's assertions, the Ohio appellate court reviewed the claims under the prosecutorial misconduct standard.  ECF Dkt. #8-1 at 146-147.  The appellate court quoted the following statements made by the prosecutor in closing argument and objected to by defense counsel that were challenged by Petitioner in his appellate brief:

> "[I]t's not the only way I want you to think about them [referring to the victims as two young men with families, mothers, brothers, sisters, friends].  And so we're counting on you and so are they." (Tr. 3005)

> "A murder is unique in that it abolishes the party it injures so that society has to take the place of the victim on his behalf demand atonement." (Tr. 3005-3006)

> "It is the one crime in which society has a direct interest."  (Tr. 2006)

ECF Dkt. #8-1 at 47.  The Ohio appellate court cited to Ohio cases holding that a prosecutor's remarks during trial "cannot be made a ground of error unless that conduct deprives a defendant of a fair trial." *Id.*, quoting *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984).  The court also cited to Ohio caselaw holding that a defendant is entitled to a new trial due to "a prosecutor's remarks only when the improper remarks substantially prejudice the defendant."  ECF Dkt. #8-1 at

147, quoting *State v. Tibbetts*, 92 Ohio St.3d 146, 749 N.Ed.2d 226, 255 (2001)(quotations omitted).

The United States Supreme Court has made clear that the determination of a federal habeas corpus claim of prosecutorial misconduct claim is not based upon Sixth Circuit precedent, but is based upon United States Supreme Court precedent and the Court must determine whether "the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process," or whether it was "so egregious as to render the entire trial fundamentally unfair.*" Bales v. Bell*, 788 F.3d 568, 578 (6th Cir. 2015), quoting *Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 2153, 2155, 183 L.Ed.2d 32 (2012)(per curiam)(finding that the Sixth Circuit erred by consulting its own precedents as to two-step inquiry in determining the reasonableness of the state court's opinion as to prosecutorial misconduct); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Wogenstahl v. Mitchell*, 668 F.3d 307, 327–328 (6th Cir.2012); *Bates v. Bell*, 402 F.3d 635, 640–41 (6th Cir.2005); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir.1999); *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir.1979). "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden*, 477 U.S. at 181.

Applying the standard of whether the prosecutor's remarks were violative of a fair trial and substantially prejudiced Petitioner, the Ohio appellate court determined that while the prosecutor's remarks were "overwrought with inaccuracy, if not entirely inaccurate, [they were] nonetheless within the 'degree of latitude' we give the parties in their concluding remarks." ECF Dkt. #8-1 at 148, quoting *State v. Liberatore*, 69 Ohio St.2d 583, 589, 433 N.E.2d 561 (1982). The Ohio appellate court found that the "more troublesome" and " blatant and maudlin appeal to the passion of the jury" was the prosecutor's projection of the side by side photographs of the two victims' dead bodies with their dates of birth and dates of deaths below them, with the prosecutor asking the jury to recall the victims not as two dead bodies but as family members and friends to their loved ones. ECF Dkt. #8-1 at 148-149. The court ruled that the prosecutor asking the jury to consider the victims as when they were alive was not relevant to the murder charges and was done only to appeal

to the emotions of the jury, which actually caused friends and family members of the victims to cry out in the courtroom.  *Id*. at 149.

Despite the prosecutor's improper remarks and projection of the photographs, the Ohio appellate court nevertheless held that these errors did not deprive Petitioner of a fair trial.  ECF Dkt. #8-1 at 149.  The court found that the remarks and photographs were not only improper, but unnecessary in light of the strong evidence against Petitioner and referred to its previous analysis of the strength of the state's case against Petitioner.  *Id*.  The court held that the fact that the remarks and photographs were unnecessary also showed that no substantial prejudice resulted from them.  *Id.* at 150.

The undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of United States Supreme Court precedent or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  In finding that the improper remarks and photographs did not deprive Petitioner of a fair trial and did not substantially prejudice him, the Ohio appellate court referred to the state offering a "classic case of circumstantial evidence for both murders – Powell and his victims were alone when the shootings occurred, no one else had access to the areas where Powell and his victims were at the time of the shootings, and only Powell exited from those areas alive."  ECF Dkt. #8-1 at 127.  The Ohio appellate court also found that witnesses who testified as to Petitioner's conduct after the shootings tended to show his guilt as well, such as when he showed up at his infant goddaughter's house at 4 a.m., a few hours after the shootings, and awakened his goddaughter in the room where the child's mother was sleeping and started playing with her.  *Id.* at 127-128.  When the goddaughter's mother asked Petitioner what was wrong, he replied, "I f*cked up."  *Id*. at 128.  The court also noted that Petitioner went to the house of a female friend the day after the shootings and spent the day there, then had his aunt drive the female friend to a motel, where he met her and they stayed there for two days, not leaving the room.  *Id*. The court also referred to the most telling of Petitioner's post-shooting activities as his attempt to contact family and friends through the letter intercepted by jail officials at the jail where Petitioner was staying.  *Id.*  The court indicated that the

letter was addressed to "the Fam," which was a "red flag" to prison officials of gang-related activity, and the letter was addressed to an address on the same street where the murders occurred and had a fictitious return address. *Id.* The court indicated that the letter stated "My real info: Jonathan Powell" and was signed "Johnny AKA Johnny B," which referenced Petitioner's nickname of "Bravo." *Id.* The court indicated that the letter included a statement to one person that "they can't charge you with murder if it ain't no witnesses." *Id.* The court noted that the letter also instructed the recipient to tell some of the people who were present during the shooting "just don't make no statements cuz they don't have to" and he apologized. *Id.* The letter also instructed the recipient to burn it "ASAP." *Id.* The court indicated that two of Petitioner's friends testified that they recognized that the handwriting in the letter was that of Petitioner. *Id.*

The Ohio appellate court also reviewed Petitioner's testimony, which it held lacked credibility, as the court ruled that the jurors could reasonably have rejected Petitioner's version of events as Petitioner testified that he was on the third floor of the house when he heard arguing on the first floor and he went downstairs to see what was happening and said that "they tripping." ECF Dkt. #8-1 at 129. The court noted that none of the witnesses placed Petitioner on the third floor of the house at the time of the shooting and in fact, they placed him in the basement with one of the victims and testified that Petitioner emerged after shots were fired. *Id.* The court also pointed out that Petitioner's version of the events said nothing about the shots that killed the other victim. *Id.*

The court also addressed Petitioner's assertions attacking the credibility of the witnesses, as the court noted that their testimony was consistent with other facts, such as the bodies being found exactly where the testimony indicated that they would be found, the fact that Petitioner was known to possess a .45 caliber pistol which was consistent with ammunition found in a box of the same brand as the bullets recovered from one of the victims, Petitioner going into hiding after the shootings, Petitioner's statements made during that time, and his attempt to silence witnesses with the letter. *Id.* at 130-131.

Upon review of the Ohio appellate court's decision, the undersigned recommends that the Court find that the Ohio appellate court's determination that the closing remarks and photographs

did not render the entire trial fundamentally unfair to the degree of a due process violation was not contrary to or an unreasonable application of United States Supreme Court precedent or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Ohio appellate court also addressed Petitioner's assertion that the state committed misconduct in its closing argument when it stated that Petitioner skipped town and hid out at a motel after the murders and how he never contacted the police department prior to the issuance of an arrest warrant.  ECF Dkt. #8-1 at 150.  Petitioner asserted that this statement was an impermissible comment on his pre-arrest silence.  *Id*.

The Ohio appellate court again found that while the prosecution made an improper remark, the remark was not so prejudicial so as to require a new trial.  ECF Dkt. #8-1 at 150.  The court noted that while the state should not have implied that Petitioner could have turned himself in to police before the arrest warrant issued, the jury knew the circumstances of Petitioner's stay at the motel as Petitioner himself testified that he stayed at a motel after the shootings and he stated that he met with an attorney and learned that the police were trying to obtain an arrest warrant for him. *Id*. Petitioner also testified that he decided that he would turn himself in if and when the police obtained the arrest warrant.  *Id*.  The Ohio appellate court therefore found no substantial prejudice from the improper remark.  *Id.* at 151.  Since the state did not tell the jury anything that Petitioner had not already admitted, the Ohio appellate court reasoned that Petitioner suffered no substantial and injurious effect on the verdict.  *Id*.  Based upon review of the Ohio appellate court's decision and the Supreme Court precedent concerning prosecutorial misconduct and the facts and evidence in this case, the undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of Supreme Court precedent or an unreasonable application of the facts in light of the evidence presented.

### E.    GROUND FOR RELIEF NUMBER 5

In this ground for relief, Petitioner asserts that he was "deprived of his right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution."  ECF Dkt. #1 at 19.

Respondent again contends that Petitioner has improperly pled this ground for relief as required by Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts because he does not state the facts supporting the ground for relief.  ECF Dkt. #8 at 37, quoting Rule 2(c) of the Rules Governing 2254 Proceedings in the United States District Courts. Respondent also asserts that this ground for relief is otherwise without merit.

The undersigned recommends that the Court find that Petitioner has failed to comply with Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts. Petitioner's fifth ground for relief merely states that he was deprived of his Sixth Amendment rights due to the ineffective assistance of counsel.  ECF Dkt. #1 at 19.  He offers no facts to support this assertion and cites only generically to the Sixth Amendment.

Should the Court wish to look to Petitioner's Ohio appellate brief and allow Petitioner to overcome the Rule 2(c) procedural bar, Petitioner cited to *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) for the standard of review for the ineffectiveness of counsel and he cited to three alleged incidents of ineffectiveness of his trial counsel.  ECF Dkt. #8-1 at 52.  The first assertion alleged a failure of counsel to cross-examine witnesses who testified that the Exhibit 503 letter was his handwriting, the second alleged  defense counsel's failure to cross-examine witnesses as to what they told Petitioner, and the third allegation was that defense counsel failed to call Lisa Patterson and Gregory Tate to impeach the testimony of Kelvin Lester and Wayne Crump.  ECF Dkt. #8-1 at 52-54.

The Ohio appellate court addressed these ineffective assistance of counsel claims, citing to *Strickland* as well.  ECF Dkt. #8-1 at 161, citing *Strickland*, 466 U.S. 668.  As to defense counsel's failure to cross-examine Petitioner's friends with Petitioner's handwriting exemplar after they testified that the letter was in his handwriting, the appellate court found that the way that the evidence concerning this issue came out at trial could not have been more in Petitioner's favor, even without the cross-examination.  ECF Dkt. #8-1 at 161-162.  The court explained that the State's expert was unable to give an opinion that the writing on the exemplar was the same as on the letter, which worked to Petitioner's advantage.  *Id*. at 162.  The court found that defense counsel validly may have not wanted to risk the possibility that Petitioner's friends would have looked at the

exemplar and either confirmed that it looked like Petitioner's handwriting or rejected it as a poor attempt by Petitioner to mask his true handwriting. *Id.*

Considering that the testimony at trial did fall in Petitioner's favor as to the expert's inability to definitively state that the writing on the letter was that of Petitioner, and that cross-examination of the witnesses may have risked testimony that the letter looked like Petitioner's handwriting, the undersigned recommends that the Court find that the Ohio appellate court's determination that Petitioner's counsel did not deficiently perform as to this issue was not contrary to or an unreasonable application of Supreme Court precedent or an unreasonable application of the facts in light of the evidence presented. The Court should find that defense counsel's choice to forego cross-examining the witnesses was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690-691.

Petitioner's second assertion of the ineffectiveness of his trial counsel concerned the testimony of two of his friends who visited him when he was at his girlfriend's house after learning about the shootings. ECF Dkt. #8-1 at 162. He refers to his testimony that was objected to as hearsay, where he began testifying as to what Wayne Crump and Bernard told him people were assuming about the shootings. ECF Dkt. #8-11 at 45. The prosecutor objected and the court sustained the objection. *Id.* The prosecutor objected again when Petitioner then went on to state that "[w]ell, I told Wayne that he knew that I didn't do it but what he told me was - -." *Id.* The trial court sustained the second objection. *Id.* The court then held a sidebar at defense counsel's request and defense counsel argued that while the testimony was hearsay, Petitioner should be able to put things in their proper context by discussing the conversations that he had with Wayne and Bernard as they had already testified. *Id.* at 45-46. He asserted that the conversations were not offered for the truth of the matter asserted, but rather to explain Petitioner's actions. *Id.* at 47-48. The trial court sustained the objections by the prosecutor, who asserted that there was no hearsay exception for allowing Petitioner to testify as to his friends' statements and defense counsel could have cross-examined these witnesses when they were on the stand on direct examination. *Id.* After the sidebar, Petitioner's counsel was able to ask Petitioner if Wayne and Bernard had visited him, if he spoke to them, and Petitioner testified that as a result of the conversations that he had with Bernard, he

-36-

called his mother and told her that he did not feel safe and he and his mother went to a motel and got separate rooms.  *Id*. at 49-50.  He further testified that he called his lawyer from the motel and they decided that he would stay there and turn himself in when an arrest warrant was issued for him. *Id*. at 50-51.

Petitioner asserted in his Ohio appellate brief that this testimony was necessary to counter the State's assertion that he fled after the murders and was hiding out in a motel.  ECF Dkt. #8-1 at 53.  He asserted that counsel was ineffective by failing to elicit the reasons for his staying in a motel through the two witnesses on cross-examination.  *Id.*

The Ohio appellate court noted that Petitioner had failed to argue that the statements that he was seeking to testify about were admissible hearsay.  ECF Dkt. #8-1 at 163.  The court further held that both of the witnesses gave damaging testimony on direct examination for the State and defense counsel may have made a strategic decision not to cross-examine them in order to limit the damage. *Id.*  The court further found that Petitioner offered no basis to find that the witnesses would have given testimony that would have changed the outcome of the trial.  *Id.*

The undersigned recommends that the Court find that the Ohio appellate court's finding that Petitioner failed to establish deficient performance or prejudice from defense counsel's failure to cross-examine Wayne and Bernard is not contrary to or an unreasonable application of *Strickland*. Counsel made a tactical decision not to cross-examine them on this issue, most likely to limit the damaging testimony, and Petitioner did not offer on state appeal and fails to offer before this Court any exception to the hearsay rule to allow such testimony or what the testimony would have been or how it would have changed the outcome of the trial in his favor.  Moreover, even if defense counsel had erred by not cross-examining Wayne and Bernard as to the conversations they had with Petitioner after the shootings and Petitioner's subsequent decision to stay at a motel, Petitioner was still able to explain his reasons for doing so to the jury when he testified.  ECF Dkt. #8-1 at 49-51. Petitioner's counsel asked him if he had conversations with Wayne and Bernard following the shootings and Petitioner indicated that they came to see him and they did have conversations, and as a result of those conversations, he called his mother and told her that he did not feel safe, so he and his mother checked into a separate rooms at a motel, he consulted with a lawyer, and they

decided that he should stay at the motel until an arrest warrant was issued for him.  ECF Dkt. #8-11 at 49-51.  The undersigned therefore recommends that the Court find neither deficient peformance nor prejudice resulting from counsel's failure to elicit the reasons for his staying in a motel through the Wayne and Bernard on cross-examination

The final assertion of the ineffectiveness of trial counsel concerns defense counsel's failure to call Lisa Patterson and Gregory Tate in his case-in-chief.  ECF Dkt. #8-1 at 163.  As the Ohio appellate court noted, both witnesses admitted that they discussed their testimony with others during the trial in violation of the trial court's admonition not to do so.  *Id.*  Petitioner asserted in his Ohio appellate court brief that "[i]t is reasonably probable that the outcome of the trial would have been different if the jury heard from multiple witnesses about these flagrant violations.  The absence of this testimony from the jury's consideration prejudiced Appellant.  Such additional testimony would have served to further impeach the credibility of the State's witnesses, including Wayne Crump who was a key witness.  There is no strategic reason for not recalling/calling these witnesses in Appellant's defense."  ECF Dkt. #8-1 at 53.

The Ohio appellate court found that Petitioner failed to provide specific reasons why he believed that Mrs. Patterson and Mr. Tate's testimony would have changed the outcome of his case.  ECF Dkt. #8-1 at 164.  The court pointed out that their testimony would not have been probative as to the issue of guilt because the incidents about which both witnesses were questioned occurred subsequent to the shootings when witnesses were scrambling to get to their cars.  *Id.*

The undersigned recommends that the Court find that the Ohio appellate court's decision is also not contrary to or an unreasonable application of *Strickland*.  As with his Ohio appellate brief, Petitioner fails to offer to this Court any reason why Mrs. Patterson and/or Mr. Tate's testimony would have changed the outcome of his case.  Thus, he has failed to establish prejudice, even if deficient performance can be presumed.

**F.**      **GROUND FOR RELIEF NUMBER 6**

In his last ground for relief, Petitioner asserts that sufficient evidence did not support his convictions and the trial court erred by denying his motions for acquittal, which violated his constitutional rights.  ECF Dkt. #1 at 19.  Respondent again asserts that this ground for relief is

improperly pled and is otherwise without merit.  ECF Dkt. #8 at 45-57.

The undersigned again recommends that the Court find that Petitioner has failed to comply with Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts.  Petitioner does not identify which convictions he is challenging, he provides no factual or legal support for his assertion, and he does not specify the constitutional right or rights that he believes were violated.  Accordingly, the Court could decline to address this ground for relief.

If the Court wishes to disregard the Rule 2(c) bar, Petitioner did assert before the Ohio appellate court that the State failed to present sufficient evidence to prove any of the charges against him.  ECF Dkt. #8-1 at 54.  He first asserted that the State failed to establish prior calculation and design and purpose on the aggravated murder convictions and failed to prove the firearm specifications.  *Id.*  He also asserts that no evidence established the conviction for kidnapping as there was no proof that he removed TreVaun or Cedric by deception or otherwise.  *Id.* at 56.

An allegation that the verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, reh'g denied, 444 U.S. 890 (1979), and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000), quoting *Jackson,* 443 U.S. at 319.  When reviewing the sufficiency of the evidence, a habeas court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for the jury. *See United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995).  Moreover, the inquiry is not whether the trier of fact made the correct determination of guilt or innocence, but whether it made a rational decision to acquit or convict.  *Williams v. Haviland*, No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins*, 506 U.S. 506 U.S. 390, 401-02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

In determining whether the state court's determination was objectively unreasonable, the Court must first determine whether the evidence was sufficient to convict under *Jackson.*  *See*

-39-

*Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010).  If sufficient evidence exists with which to convict, the inquiry ends.  *Id.*  If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*, quoting *Tucker v. Palmer*, 615 F.3d 631, citing *Jackson*, 443 U.S. at 319.  This is the "double layer" of deference due a state court determination about the sufficiency of the evidence. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).   A District Court is not permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact.  *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985), and *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983).  "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 132 S.Ct. 2, 6 (2011).  The Supreme Court has affirmed that "*Jackson* claims face a high bar in federal habeas proceedings."  *Coleman*, 532 S.Ct. at 6.

In the instant case, the Ohio appellate court cited to Ohio caselaw in determining Petitioner's sufficiency of the evidence argument.  ECF Dkt. #8-1 at 121.  However, the cases cited by the Ohio appellate court, including *State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216, 2002-Ohio-2126 (2002), and *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), both cite to *Jackson* and the standard of review for a sufficiency of the evidence analysis.

The appellate court noted that the instant case was a "textbook" case of circumstantial evidence.  ECF Dkt.# 8-1 at 121-123.  It reviewed the evidence which showed that Petitioner and each victim were alone in a room together and Petitioner emerged but the other was shot and killed. *Id.* at 123.  The court found that from this evidence, a reasonable juror could have found that only Petitioner could have been the killer.  *Id.*

The Ohio appellate court addressed Petitioner's assertion that no evidence was presented to show that he acted with prior calculation and design to commit aggravated murder as required by Ohio Revised Code § 2903.01(A) or that he acted purposely to murder the victims as required by

-40-

Ohio Revised Code § 2903.02(A).  ECF Dkt. #8-1 at 123-125.  The court noted that "prior calculation and design" was not defined in the statute, but the Ohio Supreme Court had held that it means "studied care in planning of analyzing the means of the crime as well as a scheme encompassing the death of the victim." *Id*. at 123-124, quoting *State v. Taylor*, 78 Ohio St.3d 15, 19, 676 N.E.2d 82 (1997).  The court indicated that this requires "more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill." ECF Dkt. #8-1 at 124, *quoting State v. Cotton*, 56 Ohio St.2d 8, 11, 381 N.E.2d 190 (1978).

The court determined that it had "no difficulty finding that the state offered sufficient evidence to prove that Powell acted with prior calculation and design when murdering Tate."  ECF Dkt. #8-1 at 124.  The court cited to evidence showing that Petitioner had killed TreVaun Brown earlier and then blamed Cedric Tate for bringing TreVaun Brown to the house.  *Id*.  The court indicated that a rational trier of fact could find from the evidence that when people in the house started to flee, Petitioner deliberately blocked Cedric Tate from leaving and at the moment made the decision to kill him, which occurred moments later.  *Id*.  The court found that "[t]his decision was more than just instantaneous and reflected a calculated thought." *Id*.

The Ohio appellate court then reviewed the definition of "purposely" under Ohio Revised Code § 2901.22(A) and found that sufficient evidence was offered in order to show that Petitioner acted purposely in causing TreVaun Brown's death.  ECF Dkt. #8-1 at 124.  The court indicated that the Ohio statute defined "purposely" as "a specific intention to cause a certain result." *Id.*, quoting ORC § 2901.22(A). *Id*.  The court cited to the evidence presented showing that TreVaun Brown was shot once in the temple, three times in the back, and once in the back of the leg, and the court concluded that the number of the gunshots, coupled with the location of the gunshot wounds, including a gunshot to the back, sufficed to show that Petitioner acted with the intent to cause TreVaun Brown's death.  *Id.* at 124-125.  The court also noted that Petitioner offered no evidence of self-defense and the only rational conclusion that could be made from the evidence was that Petitioner acted purposefully.

Applying the high bar of *Jackson*, the undersigned recommends that the Court find that the

Ohio appellate court's recitation of the evidence above as to Petitioner's "prior calculation and design" and Petitioner acting "purposely" in causing the deaths of the victims was not contrary to or an unreasonable application of *Jackson* or an unreasonable application of the facts in light of the evidence presented. The evidence could lead a rational finder of fact to conclude that Petitioner acted with prior calculation and design in killing Cedric Tate as he blamed Cedric Tate for bringing TreVaun Brown, who he had killed earlier, into the house, and witnesses saw Petitioner bar Cedric Tate from leaving the house after the first shooting and they saw a flash of light and heard gunshots coming from the house after everyone fled the house. The evidence could also lead a rational finder of fact to conclude that Petitioner acted purposely in killing TreVaun Brown based upon the number of gunshots in TreVaun Brown's body and head and the fact that there were three gunshots to his back.

The Ohio appellate court also found that sufficient evidence was presented to prove the firearm specifications by showing that Petitioner shot both victims, which was sufficient in and of itself. ECF Dkt. #8-1 at 125. The court noted that the firearm specifications under ORC §§ 2941.141(A) and 2941.155(A) charged that Petitioner had a firearm on his person or under his control during the commission of the murders. *Id*. The court held that "the victims were killed by firearms, so a finding that Powell shot the victims necessarily constitutes proof that he had a firearm on his person when he shot them." *Id*.

Again, based upon the standard for sufficiency of the evidence and the evidence cited by the Ohio appellate court, the undersigned recommends that the Court find that the determination that sufficient evidence was presented to find that Petitioner was guilty of the firearm specifications under which he was charged. As found by the Ohio appellate court, the fact that sufficient evidence was presented that Petitioner shot the victims and they died from gunshot wounds, constitutes sufficient evidence that Petitioner had a firearm his person or in his possession.

Finally, as to the kidnapping convictions, the Ohio appellate court cited to ORC § 2905.01(A)(3) and noted that the section defined kidnapping "as purposely removing a person by force or restraining that person's liberty for the purpose of inflicting serious physical harm on the victim." ECF Dkt. #8-1 at 125, quoting ORC § 2905.01(A)(3). The court cited to the evidence that

it found "more than" sufficient to establish the elements of the kidnapping of Cedric Tate. *Id.* The court found that the evidence showed that when all of the other individuals were leaving after TreVaun Brown's killing, Petitioner was seen putting his arm out to stop Cedric Tate from leaving the house. *Id*. The court found that this "act alone constituted a restraint for purposes of the kidnapping statute. What is more, the restraint was for the purpose of inflicting serious physical harm on Tate, as evidenced by the gunshots fired just moments later." *Id*. As to TreVaun Brown, the Ohio appellate court found that no evidence established the conviction for the charge of kidnapping Mr. Brown as witnesses only testified that they saw Petitioner and Mr. Brown walking toward the basement steps and no evidence established anything unusual or coercive. *Id*. at 126. The court ruled that the kidnapping conviction relating to TreVaun Brown had to be vacated.

The undersigned recommends that the Ohio appellate court's determination that sufficient evidence was presented to establish the kidnapping conviction of Cedric Tate is not contrary to or an unreasonable application of *Jackson* or an unreasonable application of the facts in light of the evidence. As the Ohio appellate court pointed out, witnesses testified that as they were running out of the house after TreVaun Brown was shot, they saw Petitioner put his hand out to bar Cedric Tate from leaving, then Petitioner slammed the door and he and Mr. Tate were the only two people left in the house. ECF Dkt. #8-1 at 122-123. Witnesses testified that seconds later, they saw a flash of light coming from the window and they heard shots being fired. *Id*. at 123. Cedric Tate was found dead. *Id*.

For these reasons, the undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary or an unreasonable application of *Jackson*, or an unreasonable application of the facts in light of the evidence when it found that sufficient evidence existed with which to find that Petitioner killed Cedric Tate with prior calculation and design, Petitioner acted purposely in killing TreVaun Brown, Petitioner used firearms to kill the victims, and Petitioner kidnapped Cedric Tate.

## VII.     CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court find that Petitioner's grounds for relief are improperly pled, procedurally defaulted, fail to state a federal

constitutional violation, and are not cognizable in federal habeas corpus.  Further, should the Court find otherwise, the undersigned alternatively recommends that the Court find that the Ohio Appellate Court's determinations were not contrary to or an unreasonable application of federal law as determined by the Supreme Court of the United States or an unreasonable determination of the facts of record.

Accordingly, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice.  ECF Dkt. #1.

DATE: June 29, 2017                                    */s/ George J. Limbert*
                                                       GEORGE J. LIMBERT
                                                       UNITED STATES MAGISTRATE JUDGE


        ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).